Makston, J.:
An action was brought against Clark to recover a balance due the locomotive works for building and placing an engine in a vessel, under a special contract. The locomotive works agreed to build and set up in a boat in Detroit an engine from the same patterns as the one made by them for the propeller “Phil Sheridan,” with certain exceptions, “the whole to be completed in a good and workmanlike manner, materials and labor first class.”
Evidence was given on the part of defendant that the contract as to building and setting up had not been performed. TJpon this branch of the case the court charged the jury as follows, and to this portion, of the charge defendants below excepted:
“It is claimed on the part of the defendant that there are certain defects in the work which was done under the contract for building the engine of the Gazelle; by its terms, and, 'indeed, by the law itself, the plaintiff was bound to do a good and workmanlike job. Even if the contract had said nothing in regard to that point, they would have been bound to do the work in that manner, that is, a good and workmanlike manner. In your consideration of the fact of whether work is done in a good and workmanlike manner, it is always proper for the jury to take into consideration the purpose of the work.
“ An engine which would be fit for one boat might not be fit for another boat, although it might be a fair engine, in itself considered, yet it might be an engine which would not be a good and workmanlike job if made for another boat.
“ So in regard to finish, labor, and materials, which the contract provides shall be first class; that is, first class, ^taking into consideration the uses to which this engine was to be put.
*81 “It is hardly necessary to state to you that it is not to be expected that the same work will be put upon one machine which might be expected for another, or that the same excellence of polish shall be put upon one piece of work which would be required for another. When a man is entering upon a contract to build a house in a good and workmanlike manner, we all understand substantially how that house should be built, the finish which should be given to the various parts and the materials to be used; but suppose it was a contract to build a barn, and that the contract also provided that it should be completed in a good, workmanlike manner, and that the material should be first class, and that the finish of it should be first class, it would be very plain to any man of common sense that the actual finish in the two pieces of work would be entirely different, and that the materials which would be used in the two might be different, although both of them would be composed of wood, or brick or stone, as the contract would require, still there might be a radical difference in the materials, and the workmanship, general finish, or in the character of the work upon the two buildings.
“ And in considering a contract of this kind, or considering work done under a contract of this nature, where this provision is incorporated, it is necessary always to consider for what the machine is to be used, or what is the purpose of the work, or to what use it is to be put; and having decided that, then the party is simply bound to do a good, workmanlike job, and if he provided that the material should be first class, and the labor first class, and the finish also first class, then he is bound to make it first class, taking into consideration the uses to which the work is to be put after the work is finished.”
We are all of opinion that the court erred in thus charging the jury. If the court, in the illustrations given, and in what was said, had been referring to the outside finish or *appearanee alone, perhaps it would have been unobjeetionable. The court did not, however, so limit it, but applied what was said generally and specifically to the finish, the materials, and the labor, and the jury could have understood the charge in no other way. The legal effect of *82 this charge was to authorize the jury to qualify the terms of the agreement as made by the parties, not by the subject matter of the contract, but by the use for which the boat was designed, even although that was unknown at the time the agreement was entered into. In so far as the court instructed the jury that in their consideration of the fact whether the work had been done in a good and workmanlike manner, they might take into consideration the purpose of the work, and to the illustrations given in connection therewith, there might have been no objection had the charge been confined to this. It was not, however. The court, after instructing the jury that they might take into consideration the .purpose of the work in determining whether the contract had been fulfilled in building and setting up the engine in a good and workmanlike manner, went on and said: “An engine which would be fit for ■one boat might not be fit for another boat, although it might be a fair engine in itself considered, yet it might be an engine which would not be a good and workmanlike job if made for •another boat.” Taking the charge together, this, we say, might be considered unobjectionable, but the court then, in connection therewith, continues: “So in regard to finish, labor and materials, which the contract provides shall be first class; that is, first class, taking into consideration the uses to which this engine was to be put.” Again, after giving an illustration of two different buildings, each completed in a good and workmanlike manner, yet that it would be plain to any man of common sense that the actual finish in the two pieces of work were entirely different, it is added, “ and that the materials which would be used in the two might be different, although both of them would be composed of wood, or brick, or stone, as the contract would require, still there might be a radical difference *in the materials, and the workmanship, general finish, or in the character of the work upon the two buildings.” Again, “ if he provided that the materials should be first class, and the labor first class, and the finish also first class, then he is bound to make it first class, taking into consideration the uses to which the work is to be put after the work is finished.” To my mind it is somewhat doubtful *83 whether the words of the contract, '“materials and labor first class,” were not as effectually construed and illustrated out of the case as if they had never appeared. The contract required the locomotive works to build and set up in a boat an engine of a certain size and of a certain pattern, and had the contract been entirely silent as to the labor, the materials, and the manner in which the work was to be done, would not the law, construing it in reference to the subject matter, have required first class work, labor and materials, especially if the boat were first class, and this without reference to the particular use to which the boat might be put, except in so far as the use designed might affect the glitter, show, or finish put upon the outside or showy parts ? In this case the parties contracted for first class labor and materials in building and setting up the engine, and this irrespective of the use to which the boat was to be put, and having so contracted, in plain and unambiguous language, we are not at liberty to so construe the contract as to render this provision inoperative.
The word “ materials,” as used in the contract and charge of the court, has reference to the metals or materials used in building the engine. The charge in effect was, that the materials used in building an engine for a tug boat, or for a boat to be used exclusively in carrying freight, might be considered first class, although they would not in fact be first class, and would be unfit for an engine designed for a passenger boat; indeed that there might be a radical difference in the materials, workmanship and general finish in the character of the two. The size of the engine in this ease was fixed by the ^contract, so that its fitness in that respect was not in question. Take,- then, a number of engines of the same diameter of cylinder, the same stroke, and made from the same pattern, all to be built and set up under one contract, “ the whole to be completed in a good and workmanlike manner, materials and labor first class,” the boats for which they were designed to be used, one for towing, one for carrying- freight, and the third for freight and passengers; should the use to which the boat was to be put vary and govern the contract, as to the materials and labor used and performed in building the *84 engines ? Why should the materials used in building the engine for the passenger boat, under such a contract, be better than those.used in either of the others ? Should not the materials be alike, equally good? Would not the boat used for towing vessels and property across the lakes require machinery as perfect, both in material and workmanship, as the one' used for carrying freight or passengers upon the same waters? Would they not be subject to the same storms and their machinery to the same strains in consequence thereof ? Indeed, if there should be any difference whatever, should it not be in favor of the tow or freight boat, which, on account of additional time required in making the trip, or the heavier load carried, would require superior machinery to enable them to live through the storm and protect and save the property entrusted to their care ? Is not the boat used for towing or carrying freight as dependent upon the strength and perfection of its machinery as the one used for carrying passengers ? Is not the owner as solicitous for the preservation of his boat in the one case as in the other ? In case of destruction on account of defective machinery, may not the pecuniary loss of the owner, may not the loss of life be as great in one case as in the other? What good reason can there be, then, for saying that there may be a radical difference in the quality of the materials used and labor performed in building and setting up the different engines under such a contract and yet each be first class? First class materials are just as essential in *the one case as in the othei. First class labor is equally as essential in the one case as in the other to make the machinery so that it will run safely and smoothly, and such machinery is just as essential in one boat as in the other. A boat with such machinery is superior and more valuable because of such machinery, no matter for what purpose she may be used. A person building a boat has a legal right to put first class machinery in her, and when he contracts for such, it will not do to put inferior machinery in, then turn around and say it is first class, considering the use to which your boat is to be put. An engine built with first class labor and materials will be first class whether it is put in a freight boat or a floating- palace. One *85 built with labor and materials not first class can not be made such by putting it in a mud scow; putting it to a base use will not improve its character. Where the contract, as in this case, is plain and unambiguous, if once we permit such an inquiry to be entered upon, we shall be but opening the way to endless frauds, disputes and litigations. Who shall say, considering the use to which the boat is to be put, whether the labor and materials have been first class ? Such a rule would be but incorporating into all contracts an element of never-ending uncertainty, concerning which opinions would differ as would the minds of the witnesses.
We also think that there was no analogy whatever between the question at issue and the illustrations given by the court, even if the latter were correct, and the tendency could only have been to mislead and distract the jury. In such a case the more closely the attention of the jury can be confined to the terms of the contract and the facts proven in the case, the more likely will they be to arrive at a correct conclusion.
The judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.